**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

| | |
|---|---|
| M.J. FURMAN, *et al.*, | No. C 06-3532 SBA |
| Plaintiffs, | **ORDER** |
| v. | [Docket No. 45] |
| S. ROBSON WALTON, *et al.*, | |
| Defendants. | |

Before the Court is defendants S. Robson Walton, Jim C. Walton, James W. Breyer, David D. Glass, Roland A. Hernandez, H. Lee Scott, Jr., Jack C. Shewmaker, Jose H. Villarreal, and nominal defendant Wal-Mart Stores, Inc.'s (collectively "defendants"), motion to dismiss pursuant to Federal Rules of Civil Procedure 23.1 and 12(b)(6) [Docket No. 45]. After reading and considering the arguments presented by the parties, the Court finds this matter appropriate for resolution without a hearing. *See* FED. R. CIV. P. 78. For the reasons that follow, the motion to dismiss is GRANTED.

**BACKGROUND**

This is a shareholder derivative action brought by plaintiff M.J. Furman. Furman is a shareholder of Wal-Mart Stores, Inc, owning approximately 1,600 shares in the corporation. She seeks to bring a claim on behalf of Wal-Mart against certain members of Wal-Mart's Board of Directors and senior officers. Furman alleges that the defendants breached their fiduciary duties to the corporation by authorizing and encouraging the systematic violation of federal and state employment and labor laws:

> By this action, plaintiff alleges that Defendants abused their fiduciary and controlling positions at Wal-Mart by the reckless mismanagement of the Company, authorizing and encouraging the systematic violation of federal and state civil rights, employment, and labor laws with respect to the unlawful discrimination of Wal-Mart's female workforce and other unlawful or otherwise improper labor and related practices.

Docket No. 1 (Compl. at ¶ 3).

By failing "to properly oversee, control and govern Wal-Mart's business and affairs" and failing "to ensure Wal-Mart's compliance with applicable anti-discrimination laws," Furman maintains severe

damage has resulted to Wal-Mart in the form of lawsuits, market losses, loss of goodwill, and a deteriorating public image. Docket No. 1 (Compl. at ¶¶ 68, 76). Moreover, according to the plaintiff, this has caused Wal-Mart's stock to underperform in comparison to its competitors.

As required by the governing law of the state of Delaware, on June 30, 2004, Furman made a demand upon Wal-Mart's Board of Directors that they commence action against the defendants for the damages and injuries caused by the purported breach of fiduciary duty. Following the recommendation of the Board's Audit Committee, on November 22, 2004, the Board informed Furman that pursuit of this litigation would not serve the best interests of Wal-Mart and its shareholders and that it would defer final action on Furman's demand until resolution of the litigation in a class action employment discrimination case proceeding in this District---*Dukes, et al. v. Walmart Stores, Inc.*, C-01-2252 MJJ. *See* Docket No. 48, Ex. A (Refusal Letter).

In this motion to dismiss, the defendants challenge whether Furman has standing to bring a derivative action on behalf of Wal-Mart pursuant to Rule 23.1, arguing that the plaintiff has failed to allege with sufficient factual particularity that the board's refusal of her demand does not fall within the zone of the business judgment rule.

**LEGAL STANDARDS**

A shareholder derivative action is one brought by a shareholder seeking "to enforce a *corporate* cause of action against officers, directors, and third parties." *Kamen v. Kemper Fin. Servs., Inc*. 500 U.S. 90, 95 (1991) (citation omitted) (emphasis in original). A derivative claim is one belonging to the corporation, and it is the corporation, acting through its board of directors, which must make the decision whether or not to assert the claim. *See Grimes v. Donald*, 673 A.2d 1207, 1215 (Del. 1996); *Aronson v. Lewis*, 473 A.2d 805, 811-12 (Del. 1984).

Federal Rule of Civil Procedure 23.1 addresses derivative actions by shareholders. This rule states that

> The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and,

2

    if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort.

FED. R. CIV. P. 23.1.

In assessing particularity as required by Rule 23.1, the court looks to the law of the state of incorporation of the company. *See In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 989-90 (9th Cir. 1999). Because Wal-Mart is a Delaware corporation, the parties agree that Delaware law controls whether Furman's complaint is factually sufficient.

A stockholder filing a derivative suit must allege either that the board of directors rejected her pre-suit demand that the board assert the corporation's claim or allege with particularity why the stockholder was justified in not having made the effort to obtain board action. *See Grimes*, 673 A.2d at 1216. "[T]he demand requirement is a recognition of the fundamental precept that directors manage the business and affairs of the corporation." *Aronson*, 473 A.2d at 812. In this case, Furman made a demand on the board and the board had deferred making a final decision until after the completion of the *Dukes* litigation. Both parties have effectively construed this deferral as being a rejection.[1]

If a demand is made and rejected, the board rejecting the demand is entitled to the presumption of the business judgment rule unless the stockholder can allege facts with particularity creating a reasonable doubt that the board is not entitled to the benefit of the presumption. *See Grimes*, 673 A.2d at 1220; *see also Levine v. Smith*, 591 A.2d 194, 212 (Del. 1991) (the board's refusal of the demand to pursue the action is subject to judicial review according to the traditional business judgment rule).

Under the business judgment rule, a court will not substitute its judgment for that of the board,

---

[1]     In her response Furman correctly notes, and the defendants have not disputed, that "In their motion to dismiss, defendants now ask the Court to evaluate their decision under the 'demand refused' line of case law, effectively conceding that their letter constituted a refusal of plaintiff's demand." Docket No. 55. For instance, in their motion the defendants state that "the shareholder's standing to assert a derivative claim 'hinges upon his ability to establish that the Board's rejection of his demand was wrongful.'" Docket No. 46.

    Moreover, under Delaware law, a corporation may not stand neutral in the face of a shareholder's demand; it must affirmatively object to or support the continuation of the litigation. *See, e.g., Kaplan v. Peat, Marwick, Mitchell & Co.*, 540 A.2d 726, 731 (Del. 1988). Because the defendants certainly did not support Furman's demand, their "deferral" is effectively an objection or rejection. In any event, the defendants have in no way suggested that their "deferral" is not effectively a rejection of Furman's demand.

3

1  and the board's decision will be upheld unless it cannot be attributed to any rational business purpose.
2  *See In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 74 (Del. 2006) (en banc); *Levine*, 591 A.2d
3  at 207.  A board of directors' decision will be respected by the courts unless the directors are interested
4  or lack independence relative to the decision, do not act in good faith, act in a manner that cannot be
5  attributed to a rational business purpose, or reach their decision by a grossly negligent process that
6  includes the failure to consider all material facts reasonably available. *Brehm v. Eisner*, 746 A.2d 244,
7  264 n.66 (Del. 2000) (en banc). A shareholder who makes a demand concedes the disinterestedness and
8  independence of a majority of the board to respond to the demand and waives any claim that demand
9  is excused.  *See Grimes*, 673 A.2d at 1219-20; *Rales v. Blasband*, 634 A.2d 927, 935 n.12 (Del. 1993)
10 ("Where a demand has actually been made, the stockholder making the demand concedes the
11 independence and disinterestedness of a majority of the board to respond").

12 Where a shareholder's complaint is predicated on the wrongful refusal of her demand, the only
13 issue for a trial court to determine is the application of the business judgment rule to the board's refusal
14 of the shareholder's demand. *See Levine*, 591 A.2d at 212-13 (Del. 1991). The only relevant question
15 is whether the directors acted in an informed manner and with due care, and in a good faith belief that
16 their action was in the best interest of the corporation.  *See id.* at 198.

### ANALYSIS

19 To withstand a motion to dismiss under Rule 23.1, the plaintiff must allege particular facts which
20 support a reasonable doubt that the board's refusal of demand is entitled to the presumption of the
21 business judgment rule and that the board's refusal of the shareholder's demand was not made in an
22 informed manner, with due care, and in a good faith belief that refusing to pursue the litigation
23 demanded was in the best interest of the corporation. Furman's complaint fails to allege any such facts.
24 *See Scattered Corp. v. Chicago Stock Exch., Inc.*, 701 A.2d 70, 77 (Del. 1997) ("A plaintiff's standing
25 to sue in a derivative suit . . . must be determined on the basis of the well-pleaded allegations of the
26 complaint"). In her complaint, Furman makes the following allegations regarding the rejection of her

4

demand:

> 81. The Board's failure to act on Plaintiff's demand, and its implicit rejection of Plaintiff's demand, was not the subject of reasonable business judgment nor in the best interests of the Company. Instead, the demand was wrongfully refused, in bad faith and in an uninformed manner, without adequate investigation and analysis.
>
> 82. Furthermore, despite the Board's actual knowledge of the claims asserted by Plaintiff since at least 2001 when the Board reported the financial impact of adjudicated claims against the Company, the Board has failed to seek to recover on behalf of Wal-Mart for any of the wrongdoing alleged. There is no rational business purpose for the Board's failure to take any action on behalf of the Company for such a long period of time.
>
> 83. Moreover, the Board lacked independence and impartiality to fairly consider the demand since the entire Wal-Mart Board either participated in or approved the wrongful act and omissions or recklessly disregarded the wrongs which are complained of herein or benefitted from the compensation received during the time the conduct took place. This is especially true for directors who joined the Wal-Mart Board with full knowledge of the Company's alleged pattern and practice of discrimination against female employees in promotions. Yet, rather than cause Wal-Mart to investigate and take action against the directors and executives responsible for Wal-Mart's policy of gender discrimination as described herein, they consciously failed to act in exchange for their appointments to the Wal-mart Board and the power, prestige and perquisites resulting therefrom.

Docket No. 1 (Compl.).

Furman merely offers the conclusions that the demand was wrongfully refused due to bad faith and without adequate investigation and analysis, and that the Board lacked independence and impartiality to fairly consider the demand. A review of the complaint shows that it is wholly absent of any particular factual allegations buttressing these conclusions.

Examining first the allegations of paragraph 83 of the complaint, it is settled law in Delaware that a shareholder who makes a demand concedes the disinterestedness and independence of a majority of the board to respond to the demand and waives any claim that demand is excused. *See Grimes v. Donald*, 673 A.2d 1207, 1219-20 (Del. 1996); *Rales v. Blasband*, 634 A.2d 927, 935 n.12 (Del. 1993). Thus the allegations in paragraph 83 and the similar allegations in the succeeding paragraphs of Furman's complaint are insufficient to withstand a Rule 23.1 motion to dismiss.

With respect to the assertions of paragraphs 81 and 82 of the complaint that the demand was

5

1 wrongfully refused, in bad faith, and in an uninformed manner, Furman simply offers no particularized
2 facts in her complaint supporting these contentions. Nonetheless, in her opposition to the present
3 motion, she makes three arguments that these allegations are sufficiently particular to withstand a
4 motion to dismiss under Rule 23.1.

5 First, Furman contends the defendants failed to consider all the claims articulated in her demand
6 by limiting their consideration to the *Dukes* litigation. Furman argues that her demand letter covered
7 not only alleged discrimination against female employees, as is being contested in *Dukes*, but also
8 violations of the Fair Labor Standards Act and state law for forcing employees to work off the clock and
9 miss meal breaks. By limiting the analysis to *Dukes*, Furman maintains the response to her demand
10 failed to account for the potential liabilities of actions being pursued on these other grounds.

11 An examination of the response letter to Furman's demand does not bear this out.[2] Both the
12 demand letter and the response letter focus on the potential exposure of liability Wal-Mart faces in the
13 *Dukes* litigation. In the epistolary exchanges concerning Furman's demand, the *Dukes* case is the only
14 action mentioned by name. However, the response letter repeatedly relates that the Audit Committee
15 and the Board of Directors contemplated the *Dukes* litigation *and* other proceedings. In fact, six times
16 the letter uses the phrase "the Dukes case and other proceedings" or similar locution. *See* Docket No.
17 48, Ex. A. For instance, the letter tells that the "Audit Committee takes . . . and has actively been
18 monitoring – and continues to monitor on an on-going basis – Wal-Mart's compliance with employment
19 law obligations and Wal-Mart's defense in the Dukes litigation and other proceedings against Wal-Mart
20 involving the allegations in your letter." Docket No. 48, Ex. A. It also states that

> The remedial action that the Audit Committee would recommend at this time, if it believed that the allegations in the Dukes case and other proceedings and in your demand had merit, would not include commencing a public litigation because that action

---

[2] This letter may be considered without converting this motion to dismiss into a motion for summary judgment under the "incorporation by reference" doctrine. Under this doctrine, a court may consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (citation omitted). The contents of this letter are alleged in Furman's complaint, and neither party questions its authenticity. Moreover, Furman has not objected to the Court's consideration of this document.

6

      likely would be deemed an admission of the allegations in the Dukes case and in other proceedings.

Docket No. 48, Ex. A.

      Second, Furman further contends that even if her demand letter is construed as focusing solely on discrimination against female employees, it was not a reasonable exercise of business judgment to defer investigating this practice until the completion of the *Dukes* litigation. Because the *Dukes* action may take years to resolve, its is Furman's position that deferring potential claims against the defendants risks running the statute of limitations on potential claims Wal-Mart may have against its directors. To address this concern, "the defendants on whose behalf this brief is submitted represent that, for one year following the Wal-Mart Board's final determination concerning plaintiff's demand, they will not assert any statute of limitations defense that did not exist on the date this action was filed in any action asserting the claims stated in plaintiff's demand." Docket No. 66, at 13. Therefore, the potential expiration of Wal-Mart's claims against the defendants is no longer an extant consideration.

      As a final matter, Furman argues that one of the main reasons cited by the board for not acting on her demand is now moot. The refusal letter speaks of deferring action on Furman's request until appellate review of the class certification order in *Dukes*. Since the Ninth Circuit affirmed the decision to allow class certification, this reason for deferral no longer exists.

      The defendants respond that the *Dukes* appeal is not over: Wal-Mart has filed a motion for rehearing *en banc* of the class certification issue, and will seek Supreme Court review if the Ninth Circuit's panel decision is not reversed. Moreover, the defendants maintain that the class certification issue was only one of many reasons for deferring a final determination on Furman's demand. The Audit Committee and the Board also expressed concern that Wal-Mart pursuing legal action against its directors for failing to abide by employment and labor laws would in effect be an admission in the *Dukes* case and in other actions. This would expose Wal-Mart to substantial liabilities for damages in those cases and would not be in the best interests of the corporation.

      Thus, none of the three arguments proffered by Furman does anything to ameliorate the lack of facts supporting her contention that the board's decision to reject her demand was not a rational business

7

decision. And unless particularized facts are alleged showing that the business judgment rule does not protect the board's decision not to sue pursuant to a shareholder's demand, which has not been done here, a motion to dismiss an action filed by a shareholder whose demand has been rejected, must be granted. *See Speigel v. Buntrock*, 571 A.2d 767, 777 (Del. 1990). The factual allegations of the complaint are insufficient to overcome the presumption of the business judgment rule.

## CONCLUSION

Accordingly, the defendants' motion to dismiss [Docket No. 45] is GRANTED and the plaintiff's complaint is DISMISSED. The Clerk of Court is directed to close the case file and any pending matters related to it.

IT IS SO ORDERED.

May 16, 2007

Saundra Brown Armstrong
United States District Judge